May it please the Court, my name is Shannon Inglis, Assistant Attorney General, and I represent the defendant appellants in this case, who are 13 current and former Washington State Department of Corrections Can you speak up a little please? Yes, sorry. I represent the defendant appellants who are 13 current and former Washington State Department of Corrections prison officials, and I would like to reserve five minutes for rebuttal if I may. Courts have long afforded prison officials deference in the day-to-day management of their prisons and adoption of policies, including those relating to mail. The issues in this case are whether prison officials may restrict catalogs and non-subscription bulk mail, whether they may do so without notice, and whether they may restrict mail containing personal and financial information relating to inmates and staff. Prison officials may do so. The policies at issue in this case Now, the bulk mail that's being sent out is not being sent out indiscriminately. It's being sent out in response to requests by the prisoners. Is that correct? Not necessarily, Your Honor. Prison Legal News alleges that they only send mail to their subscribers or upon request. Yes. But it's important to remember in this case what this case is not about. It's not about the monthly subscription publication. It's not about any other monthly or weekly periodical. What it is about is all other catalogs and non-subscription bulk mail, which by definition, bulk mail is 200 pieces of mail. So in some cases, it may be in response. In many other cases … Well, is Prison Legal News non-subscription bulk mail? The monthly subscription publication is sent pursuant to a subscription. As anyone would subscribe to Newsweek, for example, the inmates or someone on their behalf pays the subscription fee, and they receive on a monthly basis the Prison Legal News subscription publication, just like an individual would receive a weekly or monthly edition of Newsweek or any other magazine. When I'm after here and I'm trying to figure out who has standing to raise what issues in front of us, are you telling me that Prison Legal News, because it is a subscription publication, doesn't have standing to raise the rights to receive other kinds of publication? I'm trying to figure out what the consequence might be of the distinction between subscription and non-subscription bulk mail. No, I'm not claiming that they don't have standing. The issue before the Court is all of this other mail that they send to subscribers and to other inmates. So at issue in this case, for example, are book catalogs, subscription solicitations to solicit additional subscribers, demographic and reader surveys, and a letter in particular regarding prison libraries. So what's happening is that Prison Legal News is sending additional material, in addition to the Prison Legal News itself. Is it sending it only to prisoners who are already subscribing to Prison Legal News? They state that they send it only to subscribers or other individuals that make requests. However, it's important to me. In other words, if someone in the prison is neither a subscriber to Prison Legal News and has not specifically requested receiving materials from Prison Legal News, they don't get that material. That's what Prison Legal News would say, Your Honor. However, it's important to me. Do you say that's not true? Or why do you say it that way? Well, I say that there's no – I'm not saying that they're being incorrect. What I'm saying is there's no way to know for sure that they're only sending it to those individuals. They could send it to everyone. And more importantly, this is not only about Prison Legal News. And in the current posture of this case, are we required to assume that Prison Legal News is telling the truth about this? I think you assume it for purposes of summary judgment qualified immunity. I would like to point out that the district court order does not only reach Prison Legal News. It is a – it prohibits the department from restricting bulk mail. So we're not only here to discuss what Prison Legal News is sending. It could also be, and is, any other catalogs sent by a vendor. It could be Newsweek, Time, sending mass mailings to inmates. Let me understand again. Are you saying that the order extends to unsolicited bulk mailing from these people? Absolutely, Your Honor. Yes. But that goes beyond what Prison Legal News is sending. As I say, Prison Legal News is sending it only to people who are already subscribing or who have asked for it. And the subscribing, it would take them to be – this is different from a mass mailing to the entire prison. I don't think it's in front of us, someone who might mail to everything – to everyone in the prison. It is. Whether or not there's any connection. It is. The district court's order prohibits the department from restricting non-subscription bulk mail simply because it sent bulk rate. So what is before the court is not just these mailings Prison Legal News sends, but it's everything else. It's catalogs that are sent simply because you order an item, and then your name ends up on every other catalog's list. It's because you – for taking an example of Newsweek. No, I think you're misunderstanding the order. The court – I'm just reading from the order. The court further orders that the department is permanently enjoined from prohibiting delivery of catalogs based only on the fact that the mail is a catalog, and from prohibiting delivery of bulk mail based only on the fact that it's sent at the standard rate. That is to say, they're saying you can't use the bulk mail rate as your sole basis. If you had as your basis that this person never asked for it and had no other connection, that might be a valid basis. But, Your Honor, there's no way that a prison mailroom would know that. If you take a subscription publication, it is fairly easy to discern that that is just that. It's, you know, several come in, they look alike, they come every month, there's a mailing label, there's a subscription renewal date typically on the label. Did you make the argument in front of the district court that there's no way of knowing that? I believe so. But it sounds to me as though the district judge didn't agree with that argument. The judge did not agree, no. But I would submit to the court that there is no way of knowing, because these other mails, Prison Legal News says that they only send to their subscribers or upon request. The mailroom has no way of making that distinction, of knowing that inmate, Joe inmate is getting this only because he's a subscriber, and then taking that example to Newsweek, for example. One way you might know is if the bulk mailers send it to everybody in the prison. Well, if it sends to everybody in the prison, that sounds as though they've sent it without discrimination among those who asked for it or had some prior connection. Yes, but they could also – it only takes 200 pieces of bulk mail. There's between 1,000 to 2,000 to 2,500 inmates in a prison. So by definition, bulk mail is not an individualized mailing. Okay. I'm with you. The prisons would have no way of discerning that this inmate received it because they're a subscriber to Time, for example, versus Time is sending something to everybody they have on a list, that Time bought a mailing list from Newsweek, and that they have all these other individuals. Just in terms of administrative processing, there's simply no way to address those sorts of issues. What's the harm in allowing this bulk mail to come in, say, from Time? There's no harm in the mail itself, Your Honor, but the issue is the overall impact on the mail rooms, the custody staff, the living unit, and the processing and the burden it is, and the result is that it's more likely that additional contraband will enter and remain inside the institution. Contraband is coming in bulk mail instead of – I mean, I think we do have findings that contraband is much more likely to come first-class mail from your friend rather than from Time magazine. I would agree with that, Your Honor. However, the concern is take a larger prison, for example, 2,000 to 2,500 inmates. If each of those inmates receives one catalog a day, that's 2,500 additional pieces of mail to process. So it's the time that it takes to process that additional mail takes mail room staffs away from first-class mail, which would probably be more likely to contain processing these catalogs. So that really is just an expense argument, is to say it's expensive. And I understand it would be. It's expensive for the prison to put on the sufficient staff to handle the volume of mail. It's an expense, and it's recognizing that the greater workload on this mail – on the mail room staff, the more time they have to take to process mail, the more likely Well, that's what I mean. You have to hire somebody else to do it. Yes. And the Department is obviously bound by the restrictions put on it by the legislature. But the – in addition to the expense, it's – the greater the workload, the more likely there are going to be mistakes, because you can't devote as much time to processing that other mail. So it's more likely that contraband – Yeah, but no, but that's – you're not taking my point. If you have trouble handling the existing volume of mail with the existing staff, that is to say you're spending too much time on bulk mail and not enough time on first-class mail, the solution, obviously, is you put on more staff. And I understand that that's a burden. But that's – you can – that's how you handle that problem. Once you've handled the problem by putting on more staff, you no longer have the problem with insufficient time to go to the first-class mail. But I understand, of course, that it is a burden on the prison that it has to put on more staff. But once you put on more staff, that problem disappears. I understand your point, Your Honor. However, allocation of resources is one factor that this Court can consider. I understand that, and I agree with that. Yeah. But hasn't that argument been rejected previously, regarding the amount of time that it takes to go through the mail? This – this Court rejected that – that argument in Cook and Morrison based on the facts of those cases. This case, as we've been discussing, it's not Cook and Morrison. Those cases dealt only with subscription publications. This case is about everything else, all the rest of the catalogs and non-subscription bulk mail. So your argument is that those cases are not informative on this issue because of the increased volume of the mail? I wouldn't say that they're not informative, but I would say this case is much different. The Court in those cases was careful to point out that subscription publications made pursuant to an individualized request were much more akin to an individualized letter than to bulk mailings. And because of that, they deserved more attention. Let me ask you this. What is the record in this case, not the hypothetical possibility, but what's the record in this case regarding the volume of bulk mail that had been processed? Your Honor, Prison Legal News did conduct a mail count at one of the institutions, and it was approximately 30 catalogs in bulk mail that came in that day. However, I would submit to the Court that what that shows is that the policy is working. Inmates know that they cannot receive catalogs in bulk mail. Therefore, they're not going to request them. And vendors, at the same time, know that if they send their catalogs to inmates and institutions, they're going to be returned. So they're not going to be returned. But is there in the record that that's true, that the inmates – I thought this was unsolicited mail. I thought this was geared toward unsolicited mail as opposed to requested mail. Yes. But by example, it does – the record does indicate that inmates – because, I mean, inmates like to get mail. So they will request catalogs. They'll request other items. So knowing that they can't receive those, they're not going to make the request. And vendors are going to know that they won't be admitted into prisons, and so they won't. Do you think people who process bulk mail will take the time to look into each state to determine whether or not the prison regulations prevent bulk mail? I don't know, Your Honor. But I would suspect that if they regularly have a catalog returned from a prison, that they will stop sending it. And another important thing to keep in mind is that there are alternatives available to these inmates. They can – which is another factor that this Court may consider – and that the alternatives are they can view catalogs in the libraries, the prison legal news catalog is in the library, and it's also contained in the back of each subscription of the prison legal news monthly publication itself. So there are other alternatives available. But isn't this contained in the back of the prison legal news? The book catalog is contained in the back of every subscription publication. But that's not the only catalog at issue. No, but it lists most of the books that they sell. But, again, they're also in the prison libraries. For each piece of mail that comes into the institutions, it must be sorted. The housing assignments must be looked at if they are not on the outside of the envelope. The inmate has transferred institutions. It must be forwarded. It must be screened. Now, does bulk mail have to be forwarded? They certainly don't forward it when they send it to me. Well, yeah, the post office doesn't. That is correct. But – Is there a requirement in this order that bulk mail has to be forwarded if the prisoner has moved to a different prison? I think in an abundance of caution, the Department would probably go ahead and forward that. I honestly – I don't see that in this order. You're right. It does not specifically require that. And I do not know what they are doing with it. It needs to be screened for contraband that might be inserted in the mail itself and also for content. And notice must be provided to the sender and the inmate if it is rejected. And it must be stored pending appeal. These policies are rationally related to reducing the amount of contraband that enters and remains inside the prisons, to furthering safety and security, and to utilizing prison resources. These also assist in security in the living units because the less – increasing the amount of catalogs and non-subscription bulk mail that enters the prison results in a larger volume of mail entering the secure living units. There are more places for inmates to hide material in the cell, takes custody staff more time, and is more difficult to conduct cell searches. And by taking their time – requiring them to devote more time to these activities, it takes their time away from – You say it takes more time to conduct a cell search because there's going to be more papers stacked up in the cell? Yes. Yes. And this takes their time away from more important custody and security-related activities, such as supervising inmates, which is their primary goal and their most important goal. Would it be possible for the prison to have a rule that says you can't have more than X amount of paper in your cell, independent of your legal papers, for example? They do, Your Honor. However, that restriction, while it is enforced, it is not effective in isolation because that does nothing to reduce the burden on the mailroom staff, and it also discounts the tension. If you turn this custody staff into constant enforcers of the property regulations, it greatly – That's another burden. Yes. And it greatly increases the chance that there will be tension between inmates and staff in those secure living areas, which is the last place that you want any unneeded tension. If there are no further questions, I'd like to reserve the remainder of my time. Thank you. Good morning. I'm Jesse Wing. May it please the Court, I represent Prison Legal News and Rollin Wright. Your Honors, I'd like to make three major points here this morning. First, that it has been clear for some time that a prison may not create arbitrary classifications of mail, that is, both the bulk mail ban and the catalog ban. Secondly, that it has long been true that notice is required whenever incoming mail is censored by a prison. And third, that the Department of Corrections has not asked for the relief below that they seek from this Court with regard to third-party legal materials, and therefore, the Court should deny that request. Four times in the past three years, this Court has announced and affirmed in unanimous decisions that a State violates the First Amendment by selecting arbitrary classifications of mail to censor as a method of reducing the volume of mail in a prison mailroom. Most recently, in Clement v. the California Department of Corrections, that's a case from this year, the Court found that it was impermissible for the State to prohibit all Internet-generated documents. Now, that had nothing to do with subscriptions. There was no discussion of whether something was solicited. It was, frankly, a reliance on the tandem cases, Prison Legal News v. Cook and Morrison v. Hall, which made it absolutely clear a State may not use arbitrary classifications such as the fact that mail is generated from the Internet as a method of controlling the amount of mail that comes through. We argue, therefore, that Judge Lasnik carefully reviewed the facts in this case, had no alternative under this precedent but to enter the injunctions that he entered, but we believe that he was too lenient with the Department of Corrections. And given this string of clear precedent, the Department of Corrections was not properly given qualified immunity in this case. It was quite clear they adopted simply another forms of arbitrary classifications by adopting a bulk mail ban and a catalog ban. It is clear under the U.S. Supreme Court's most recent pronouncement with regard to qualified immunity in Hope v. Pelzer that it may be the reasoning of a court's decision, not the fundamental or material or similar facts, which make it clear to a court that there are policies that just shift to a different context unconstitutional behavior, and that's what we believe is here. Ginsburg. Counsel, what's your response to opposing counsel's position that this case is a little different than the previous cases because of the sheer volume of deliveries that we're talking about? Well, Your Honor, the sheer volume is not much more than that directly at issue in Prison Legalism v. Cook, which this court found de minimis. We didn't simply go for one day, but we had a week's worth of inspections at the Monroe Correctional Facility, which is the largest facility in this state, and on average there were just 31 pieces of bulk mail and catalogs combined. Given the fact that the Department of Corrections has not given notice when they censor materials and therefore do not return them either, they throw them in the trash, there is no reason to believe that any vendor is aware of these policies, and therefore there would be no change given Judge Lasnik's position or his order. I would also like to add that there is a string of decisions which go back to Crofton v. Rowe in, I believe, 1998, in which the various Department of Corrections has said, my gosh, if you tell us we have to deliver this mail, we're going to be inundated. We have the testimony of the Department of Corrections in this case, which shows that they were not inundated after Crofton v. Rowe. They were not inundated after PLN v. Cook. They were not inundated after Morrison v. Hall. And they have not appeared in front of Judge Lasnik since his order 16 months ago saying we are inundated. So we don't think that's a rational approach. What about counsel's reliance on language in the decision that specifically limited it to be a subscription publication? Well, Your Honor, if you look at Prison Legal News v. Cook, they alternately, the panel there alternately uses the phrase, this is Judge Beezer, subscription publications and subscription mail. It's quite unclear that the Department of Corrections' position is at all correct. In fact, if you look at the decision, it appears that they're talking about something akin to a letter. Just, I'm sorry. Go ahead. If it's unclear, then doesn't that support the prison's position that there was no clearly established constitutional right that was being abrogated? I don't believe so, Your Honor. And I think that what is absolutely clear from Prison Legal News v. Cook and Morrison v. Hall is that no reasonable official may arbitrarily select a class of mail, like a grab bag. Let's see what we could get rid of. And that's what they've done here, catalogs, bulk mail, and say, based on that rationale, there's going to be less fires in the prison cell. Based on that arbitrary classification, there's going to be more security in the prison, less contraband. As this Court has recognized, that's the opposite. It's the first-class mail where there's more likely to be contraband. All of these arguments have been made before. All of them rejected. Any differences between the mail in this case and PLN v. Cook is indistinguishable. We have here the offending catalog, okay? No prisoner is going to be able to hide anything in this. This is a one-page catalog of Prison Legal News that offers books that educate prisoners about their rights. We have here the subscription renewal notice. Nothing's going to be hidden in here. In addition, based on these unconstitutional provisions, the Department of Justice publications have been censored by the Justice Department, excuse me, by the Department of Corrections. There are lots of very valuable materials that are sent in and censored under this policy, which are clearly protected by the Constitution, and which the Department of Justice, excuse me, the Department of Corrections has no justification for censoring other than an arbitrary classification. They come in because the government can send them cheaper, or Prison Legal News can send them cheaper. And I would encourage the Court to look at the ACLU's amicus, which shows that there's ample evidence that the whole issue is preempted by Congress's decisions. Now, I also want to point out that this Court recognized in Krug v. Lutz that following Thornburg, this Court, this Circuit has repeatedly acknowledged that withholding delivery of inmate mail must be accompanied by the minimum procedural safeguards established in Martinez over 30 years ago. Krug involved the censorship of allegedly obscene materials, which are obviously not protected by the First Amendment. But this panel recognized, excuse me, this Court recognized that the only way to challenge that censorship decision was if notice and an opportunity for hearing were given. And if the Department of Corrections would be allowed to make the sole decision with no notice, one could never challenge those decisions. And Krug certainly stands for the proposition that all the censorship of bulk mail in this case, without notice, is unconstitutional and has been so for over 30 years. In fact, in Sorrells v. McKee, this Court recognized that the only reason why the censorship without notice in that case allowed qualified immunity is because it was considered a random mistake, whereas here we have a policy of the Department of Corrections to censor without notice. What would be the consequence, as a practical matter, of reversing the district judge's holding as to qualified immunity? I mean, what's at stake? I understand, in a general sense, damages, but are we talking about real money, or are we talking about the nominal damages? Well, Your Honor, there was an expert report submitted in this case. I think in round numbers, the expert found that approximately $2,500 of damages and lost subscription and book sales to prison legal news is at issue. And for a small nonprofit, that is quite significant. But from the standpoint of some huge commercial case, we're not talking about vast sums of money. And is the question of whether you get qualified, whether you get damages or not, make any difference with respect to attorney's fees under 1988? I don't believe so, Your Honor. I think injunctions would entitle the plaintiffs as prevailing parties to attorney's fees. So realistically, we're talking a fairly small amount of money under the qualified immunity issue? Yes, I think that's correct. Your Honor, I would also like to focus a little bit on the issue that's raised under third-party legal materials. The government, for whatever reason, did not ask for qualified immunity of the third-party legal materials issue in their motion for summary judgment. We think as a procedural matter, that should preclude them from asking the court to do something here that they never asked Judge Lasnik to do. In addition, you could see from our brief below that we identified in our motion for summary judgment ten different dates of the case on which substantial numbers of third-party legal materials were rejected and censored. The Department of Corrections addressed only four dates and only certain portions of the documents that were censored. Certainly, Judge Lasnik could not grant summary judgment to the government without being presented with all the evidence necessary to evaluate each of those documents. As the Court recognized in the decision below, there were well over a hundred documents requiring individualized determinations to see whether the justification for that particular document, for censoring it, was legitimate. The only thing Judge Lasnik could reasonably do in this case was order a trial. We would hasten to state that there were certain documents we identified for which the Department of Corrections admitted they should not have been censored, and in fact, there were some documents which there was no legitimate reason the government could come up with. So if anything, the Court would have been justified in granting summary judgment to the plaintiffs on certain of the documents and ordering a trial on the rest. Counsel, if the Department or the prison officials here did not ask for qualified immunity concerning a third-party legal materials, is that issue before us properly? Can they seek review of the denial? Your Honor, I think that this may not be a jurisdictional issue but may rather be a reason for affirming Judge Lasnik's decision. I'm not sure if I've answered your question. In other words, you're saying it's properly before us? I think it may be properly before you, but I'm not certain whether it's rather just a reason for affirming, but I can't answer that definitively. If you made no order, how can there be an appeal from an order not made? Well, Judge Lasnik entered an order denying qualified immunity, and that's why I think it may be properly before the Court. Oh. I thought you had argued that they didn't ask for qualified immunity. That we do make that argument, yes. But the Court made that determination? Yes. Without a request? That's the way it appears. All right. So that's why I think you may have jurisdiction, but it's not a proper basis for affirming here. Now, I wanted to also address, if I could, Judge Rawlinson, your question about why the prior precedent is sufficient in this case. And I would direct the Court's attention, if I could, to the case of Stella v. Kelly, 63F, 3rd, 71, which is cited in our brief. There must be a plausible rationale that the First Amendment right at issue applies less broadly in the circumstances at hand, not a wholly artificial dichotomy. Now, in that case, there were members of a zoning board who argued that they had been removed from the zoning board for their free speech. And the Court said there was no distinction there between that case, which involved appointed officials, and a prior case, which involved elected officials, that the same reasoning applies. Likewise, in this Court's ruling in Vance v. Barrett, 345F, 3rd, 1083, on page 1094, 2004 case, the Court said that there was no distinction, that there was a distinction without a difference, rather, between the retaliation by the Department of Corrections against prisoners who, in this case, refused to waive their constitutional rights. And that was a distinction without a difference versus the precedent, which simply said the Department of Corrections could not punish those who exercised a constitutional right. In other words, this Department of Corrections officials should not be given a buy simply because they can artfully come up with some way of mischaracterizing the evidence in this case. Rather, qualified immunity should protect those officials who are trying to comply with the law, not those who are trying to evade the law. I'd like to reserve whatever time I have. Kennedy. Can I go back to the qualified immunity in the third-party legal materials issue? I'm reading from Judge Lasnik's order, footnote 14. He writes, this finding of qualified immunity is limited to the issues resolved in this order. The Court expresses no opinion regarding whether the individual defendants will only be entitled to qualified immunity should prison legal news ultimately prevail on his claim regarding censored third-party legal materials. Now, I understood you to say something different from what I just read in that footnote. It seems to me that he saved out that question. I think he did. And if I misspoke, I apologize. I think that — Maybe you spoke correctly and I misunderstood. That happens. I think that Judge Lasnik said in his order that a trial was required to determine the facts that would support any basis for qualified immunity. And so he was, indeed, denying qualified immunity at this point, but expressing no opinion as to whether these officials would be entitled to it after trial. And we think that position should be affirmed. Okay. I reserve the remainder of my time. No, you're done. You have some more time, which you may use, but you can't reserve. You're done? Okay. Thank you. Thank you. Was there a cross-appeal? I'm sorry? I don't know. Some Judge Rawlinson reminds me. Was there a cross-appeal? In which case, you might have time. There was a cross-appeal. Oh, sorry. Regarding the qualified immunity. In that case. You have reserved four minutes and ten seconds, and you may thank Judge Rawlinson. This Court has never held that catalogs and non-subscription bulk mail must be individually delivered to inmates, nor has it held that notice must be required if they are not. This Court's holdings have been limited to subscription publications only. Cook involved the nonprofit Prison Legal News monthly subscription publication itself. Morrison involved the for-profit Montana Outdoors subscription publication. This Court recognized that individual requests and subscriptions were similar to individualized correspondence and, therefore, were to be afforded the same protections. This Court has also never held that notice must be required, and it's important to remember because this Court has not addressed the issue, it's appropriate to look to the rulings from other circuits. Other circuits and other district courts which have considered policies similar to Washington's have found them to be constitutional, as related to catalogs and non-subscription bulk mail. It's also appropriate for prison officials to consider Washington district court rulings on their own policies, which have found their policies constitutional. And another matter to point out, in Minniken v. Walter case, which was decided in 1997, that was essentially the same case as Cook. The Washington district court required or found that the department could not prohibit nonprofit subscription publications, and since that time, the department allowed subscription publications. So when Cook comes down, when Morrison comes down, it's nothing new. It's still about subscription publications. If this Court holds that the department must deliver subscription publication or non-subscription publications, excuse me, and catalogs, non-subscription bulk mail and catalogs, it will be doing so for the first time, and therefore, prison officials are entitled to qualified immunity from damages. The district court did not err in finding that they were entitled to qualified immunity. It's all of the same. Third-party legal matters, legal materials, qualified immunity. My response is that it was raised, it was briefed, it was argued, and the district court ruled on it. He ruled on it in the order on summary judgments, denying it. And he also, in the ruling on prison legal news motion for reconsideration, also specifically indicated that he had denied qualified immunity. He ruled on it. It's properly before the court. And we would ask the court to reverse his decision on that ground, because prison officials are entitled to qualified immunity. First, because there's no constitutional violation in restricting material that contains personal and financial information regarding inmates and staff, where that information poses a threat to the safety and security of both those individuals and to the institutions as a whole. How is that distinction made regarding whether or not there is a danger, a threat of danger? How is that, if there's a published opinion, isn't that part of the material that was being censored? I don't believe so, Your Honor. I do know in one submission to the court, prison legal news indicated that the district court ruling had been restricted. However, it was sent with a copy of the check, which would be restricted because it's one copy of the check, and it is the amount of funds that are being sent to an inmate. Is there conflict in the evidence? I mean, as I see the posture of this case, District Judge Lasnik is saying, well, you know, it kind of depends on what the proof turns out to be. And there's enough disputed question of fact, I can't decide at the moment. That is what he said, and I would submit that that is, that defeats the purpose of qualified immunity, that he should have taken any questions of fact and the like most favorable to prison legal news and should have made a determination because it's an immunity from suit by putting it off until trial, the immunity of the patient. Well, I understand that, but what my point is, and correct me if I'm wrong, my understanding is that he said, listen, if everything that prison legal news says is true and is given the evidence of, well, then there may well not be the other side that, say, your client is disputing it, and depending on what turns out to be true, there may or may not. But given that if I take prison legal news as evidence at its full value, I can't give you summary judgment. He found that there was a question of fact. I see my time is up. Thank you. Thank you. Your Honor, there must be a limit. There have been a flood of cases coming before this Court with arbitrary classifications one after another. And the Court, we believe, should make it clear, as clear as it has already made it, but here with the extra measure of damages. To save the Department of Corrections, they must find another way to address any legitimate penological justifications they have for administrative costs, for reducing mail, besides the grab bag approach. I might add that opposing counsel has raised other factors in the Turner factor test which have not been addressed by the lower court and have not been adequately briefed before this Court, including that prison legal news documents are available in libraries, which the record below show is largely not true. So we'd ask the Court not to start looking at facts that are not accurate, raised by opposing counsel. Now, in addition to Johnson, there were U.S. Supreme Court decisions which were censored and are in the materials, as well as Judge Lasnik's order, which was to injunction. That is a third-party legal material. That was not addressed, of course, in Judge Lasnik's decision because it was not censored until after that. But that is the type of evidence that needs to be addressed by a jury. Ginsburg. So you agree with the ruling that there were questions of fact that need to be resolved before the qualified immunity determination can be made regarding the third-party legal materials? Yes. Now, I'd also like to point out that some of the mail that would be at issue here could be very, very important mail, and it would be completely irrational for the Department of Corrections to censor. For example, if King County or some other county were to send out property notices, which they would be certainly justified in doing, to individuals who own homes but they happen to be in prison, that type of material would be thrown out in the trash with no notice. But doesn't the Department make a determination whether or not the particular third-party legal materials contain information that would be a security threat in the institution? I should have been more clear. Your Honor, the property notices would be thrown out because they were bulk mail, not because they were third-party legal materials. I thought we talked about the third-party legal materials issue. I'm sorry. I was moving too quickly to try to fit within my time. I'd also like to just point out that this Court in a very recent decision, Balrampour v. Lambert, made it clear that as of Prison Legal News v. Cook, it became clearly established that arbitrary classifications such as bulk mail bans were unconstitutional. Judge Alicorn, I'll take that decision, didn't you? Judge Alicorn? Yes. And I believe that a careful reading of that decision would show that after Morrison v. Hall, even a bulk mail ban that related to commercial mailings, in that case it was a magazine comic book, were clearly unconstitutional. And if one takes any magazine, one can see that they are in large part cataloged full of advertisements. And in this case, there is even evidence that some of the prisoners, including Paul Wright, received newspapers, in some cases filled with up to 36 circulars. Well, counsel, that case, I was on that panel when that case was written, but that was a little different. We were talking about sexually explicit materials and how to determine whether or not the materials were as efficient sexual contents of a fit within the regulation. So I think that was a little different than the rest of the case. May I address, Your Honor, about that? Yes. My reading of the case certainly suggests that's a big part of the case was the sexual materials. However, I also believe there was a Green Lantern comic book about which there was no issue having to do with sex. And it was simply a question of whether the censorship of the Green Lantern comic book took place before or after the law was clearly established. Right. And it's my understanding of that Court's decision. So you're talking about the bulk mail holding statement that was in the case. Yes. Okay. Because it predated CPLN v. Cook, qualified immunity was awarded. I see my time is up. Thank you. Okay. Thank you. Thank both sides for a helpful argument. Prisoner Legal News v. Lehman is now submitted for decision.
judges: Alarcon, W. Fletcher, Rawlinson